Minshall, J.
The original suit was brought in the court of common pleas, and appealed to the district court of the county, where it was tried upon the pleadings and the evidence offered by the defendants below.
The suit was brought to foreclose a mortgage executed by Chappelear and wife, securing certain notes executed by Chappelear to the plaintiff’s intestate, Huldah J. Turner, on February 10, 1871. The notes amounted to $3,500— the first maturing April 1, 1871, and the last April 1, 1874.- They had been made to secure a portion of the purchase-money due upon the mortgage premises; and each was made payable to “ Huldah J. Turner or bearer.”
*130 Neither the title nor ownership of the plaintiff was denied by the answer. The defense was that he, the defendant, had, at different times, paid on said notes to P. F. Turner, “the then lawful holder and bearer thereof,” certain sums of money, giving the dates and amounts; the first sum, $1,500, having been paid on April 1, 1877, and the last $200, on June 26, 1874; and that on February 3, 1880, he tendered the amount of $1,289.10 remaining due, to the administrator, who had been appointed December 10, 1879. No administrator had been appointed previous to this time. The cause having been submitted to the court, judgment was rendered in favor of the plaintiff for .the full amount of the notes secured by the mortgage, less the amount tendered, which had been paid into coui’t and received by the plaixxtiff, and an order of sale xnade; a motion for a new trial was xnade and overruled, and a bill of exceptions taken.
It appears froxxx the bill of exceptions that the defexxdants offered the deposition of Peter F. Turner, who testified that the payments on the notes had been made to him, the first oxxe having been made on April 1, 1871; and that he had the notes “in his hands” at the time each of the payxxxents was xxxade. But he was not asked, nor did he testify, that he was the ownex', or claimed to be the owner of them. He also testified that Mrs. Turner died on March 3, 1871. The bill of exceptioxxs also states, that Chappelpar admitted oix the trial that at the time the notes and xxxortgage. were made to Huldah J. Turner, she was the wife of Peter F. Turner, which fact was known to hixxx, as also the fact that she was dead at the time h,e made the payments claimed by him.
The plaintiff below dexnurred to the evidence; the court sustained the demurrer and rendered judgment as before stated. Without determining whether, in any case, oix a trial to the coux't it is proper practice to demur to the evidence, we think there was no error in the court rendering judgment for the plaintiff upon the evidence offered by the defeixdant. The denxurx-er having been submitted to the court trying the case, px’csented not merely the question *131 whether there was any evidence tending to support the defendant’s claim, it was, in effect, a submission of the case upon the evidence that had been offered by the defendants.
Jit will be observed that there was neither averment nor evidence that P. E. Turner, to whom the defendant made his payments, was the owner of the notes and mortgage; the averment is that he paid to “the then lawful holder and bearer” of them. That is, he claims to have made payment to a person authorized to receive payment; this person not being the owner of the notes, could only have been authorized to receive payment upon them by being the agent of the owncr.js
That we have given the correct construction both to the pleadings and the evidence in the case, more fully appears from the averments of a cross-petition that was filed by the defendants. It is there averred that the notes and mortgage were made as above stated by the direction of Mrs. Turner, who, by reason of her ill health, did not expect to live long, that the same might, in the event of her death, be collected by her husband, without the trouble and expense of administration. That this fact was known to the defendant, and that he made the payments to P. E. Turner in pursuance of that understanding.
; Now, who was the owner of the notes and mortgage at the time the defendant made the payment claimed by him? Not Mrs. Turner, for she had died on March 3, 1871, and the first payment was made after that time, April 1, 1871. The title had passed to the administrator of the deceased,' and any agency she may have conferred on her husband in her life-time to collect the notes, had been revoked by her death. The defendant had knowledge of the death of Mrs. Turner at the time he made the payments, and, therefore, had knowledge that the husband had no right to receive payment under any authority that may have been conferred on him by her before her death. It is true that such power might have been conferred on him by will, but she conferred no such power in that way; she died intestate.
*132 No question as to the weight of evidence is presented upon the record. The title of the administrator is not disputed, and no authority from him to make the collection is set up or claimed: The fact that the payment was made to a person who had the notes in his possession at the time, must be taken in connection with the admitted fact that his possession was referable to an authority that had been conferred on him by the deceased, and was revoked by her death. Hence as no authority derived from the administrator was asserted, and as the evidence showed that any authority derived from a mei'e possession of the notes had been revoked, there was a total failure of proof upon the only issue of fact in the case —that he had paid to the lawful holder and bearer of the notes.
The defendant makes no other claim as to the right of the husband to receive payment. The circumstances show that he had no such authority, and as- he was fully acquainted with the facts, he must be held to have known the law applicable to them.
A number of cases have been cited in support of the claim of the plaintiff in error; but none of them go to the extent of holding that payment to the holder of a note payable to bearer will constitute a defense against the owner, where the holder had no authority to receive payment and the maker had notice of the facts. The principal case relied on is that of Pettee v. Prout, 3 Gray, 502. It was a suit upon a note payable to a person named, or bearer. The title of the plaintiff was denied. He relied upon the production of the note. Shaw, C. J., delivering the opinion, said: “ Where a plaintiff brings the note declared upon in his hand, and offers it in evidence, this is not only evidence that ho is the beai’er, but also raises a presumption of fact that he is the owner; and this will stand as proof of title, until other evidence is produced to control it.” Such is the general rule as to the payment of a note payable to bearer; any person having it in possession may be presumed to be entitled to receive payment, unless the payer has notice to the contrary. 2 Dan. Neg. Inst., § 1230. “If a note *133 is paid, not in the usual course of business, or to a person having the custody, but not authorized to receive paymentj and that fact is known to the party paying, though the note be given up, it is no discharge against the true owner.” Per Shaw, C. J., in Wheeler v. Guild, 20 Pick. 545, 552, citing Kingman v. Pierce, 17 Mass. 247. “If payment be made to a person who assumes to bo duly authorized, but in fact is not so, as if made to a person acting as agent, but not in fact an agent, or to a person purporting to be the personal representative of a party supposed to be dead, but who is in reality still living, the payment is invalid and a mere nullity.” Story Prom. Notes, 7th ed., § 375. And the same is true of payment to an agent after the revocation of his authority by the death of the principal. Id. § 378.
In the case before us the maker is shown to have known that the payee was dead, and that the person who presented the notes for payment was simply acting under an authority that had been terminated by her death.
It is suggested that the husband might have become the owner of the notes by reducing them into possession with the consent of his wife before her death; or by purchase from her, or merely by her gift. This is quite true; but what does it avail here, since no such claim is made ? The ownership of the notes and mortgage was not in question; hence inferences as to ownership were wholly immaterial — could not, in fact, arise in favor of a party who did not claim to be owner.

Judgment affirmed.